## Scott v. Wuynn, et al

(Decided January 23, 1913.)

### Appeal from Madison Circuit Court.

Easements—Interference With Passway—Action to Enjoin Interference—Evidence.—In an action by appellees to enjoin and restrain appellant from interfering with their passway to and from their farm to the public road, evidence examined and held that the passway does not touch appellant's land, but is wholly over and upon the land of appellees, and the chancellor properly adjudged that they were entitled to the relief sought.

JOHN C. CHENAULT and T. J. COYLE, for appellant.

BURNAM & BURNAM, for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This appeal involves the right of appellees to an out-let, or pass-way, from their farm to the public road, known as the Boone Gap Road, leading out of Berea, in Madison county. Many years ago, Joel Todd and Anderson Elder, brothers-in-law, owned farms on opposite sides of this road. Some twenty-five or thirty years ago, the time not being definitely fixed, this old road was straightened, at a point between these two farms; and, in so doing, a part of it was shifted over on to the Todd land, thereby throwing a narrow and irregular strip of land belonging to Todd on to Elder's side of the road. The witnesses vary as to the width of this strip of land. Some state that it is as wide as forty feet at one end and about ten feet at the other; while others state that it was rather of a rectangular shape, not as wide as forty feet in the center, and tapering to nothing at the ends or points, at which it left and again entered the old road. This difference of opinion as to the size and shape of this strip may be accounted for by the fact that, in the earlier times, roads were not laid out and surveyed with mathematical accuracy and were not of a uniform width. Some of the witnesses may have regarded

the old road as being wider than the others did; and, in this way, this discrepancy in their testimony is readily accounted for. After the change in this road Joel Todd died. His land was sold at commissioner's sale and bought in by Fish and Coyle. They sold it, and by mesne conveyances, it, or the great part thereof, passed to and became the property of the present owner, Clint Scott. The strip, which was cut off from this land by the change in the road above referred to, was not sold with the balance of the farm. The Elder land, on the opposite side of the road, passed to and is now the property of Smith and Wuynn. Something like a year before the controversy, resulting in this litigation, arose, Clint Scott purchased that portion of the Todd land which had been cut off therefrom by the change in the road. Conceiving that the road used by Smith and Wuynn, in passing from their farm to the public road, was over a portion of the land which had been cut off from the Todd farm and which he had recently purchased, Clint Scott notified them that he was going to fence same, and proceeded to do so. Whereupon, they instituted this suit to enjoin and restrain him from interfering with their right of way to and from their said farm. A mass of testimony was taken, and upon consideration, the chancellor found that the plaintiffs were entitled to the relief sought and so adjudged. The defendant appeals.

It appears that, at the time this litigation was instituted, neither of the parties knew exactly where the lines dividing these farms ran. The plaintiffs caused a survey to be made by E. C. Seal, a practical engineer and surveyor. According to his survey, the plaintiffs, in passing from their farm to said road, passed over their own land, and not over any portion of the Todd land which had been cut off by the change in the road. It was also surveyed by John Fowler, who located the line of the Elder land, now owned by plaintiffs, practically the same as Seal did in his survey. Appellant likewise caused it to be surveyed, first by John Moore, who died before the trial, and later by J. S. Wilson. According to the testimony of witnesses, who were present at the time Moore ran the line, the out-let was over the land of appellant. Wilson's testimony is of little value, for the reason that he states that it was apparent that he had made a mistake in his survey, as he was unable to

make the lines meet. So likewise, from the testimony, of the witnesses we have no means of knowing with what accuracy Moore ran these lines, since none of them know the plan adopted by him in doing so, that is, it is not known that he found or discovered any point recognized as a corner from which the survey could be run. While the case was pending, the court, on motion of the parties, appointed J. S. Boggs, the county surveyor, to go upon the land and run this line. He did so, and found it to correspond with the survey as made by Seal. Seal established this line as follows: He found, upon an inspection of the papers, that the line between the Wuynn and Scott farms ran, for some considerable distance, along an old and established line known as the Mastin Clay line, one end of which began at a marked hickory tree in the Town of Berea. He commenced at said tree and ran along the courses, called for by said Mastin Clay line, a distance of some 300 poles to a point where it reached the Wuynn land, and continuing along said line to the southern part of the Wuynn farm. In running this line, he found that it was recognized as a division line, separating several farms abutting thereon, which called for the Mastin Clay line. According to said line, as so run and established, the out-let from appellee's farm, and over which they traveled in going to and from same, was entirely upon the land of appellees, and did not run upon any part of the old Todd farm which had been cut off from the remainder of the farm by the change in the road. Boggs, according to his report, established this line in an altogether different way. He says that, upon an inspection of the ground he found that every known corner to the Anderson Elder tract, which is the land now owned by appellees, was gone, and that the title papers held by appellees furnished no aid whatever in establishing this line; and that he then took appellant's deed and found that it had one known corner, "a stump on the bank of Brushy Fork." He thereupon surveyed appellant's land, beginning at this known corner and established two points, called for in the old Boone Gap road, designated on the accompanying map by the letters A. and B. The line between these two points was then prolonged to D., the place where it intersected the old Mastin Clay line. From this point, he followed the calls N. 38, E. 10 poles; N. 6 W. 12 poles; N. 32 W. 8 poles, these being the calls and distances called for in Wuynn's

N

S

Brushy Fork

Scott Land Line

Stump

House

Martin Clay Line

F

E

New Road

B

A

C

D

Point Smith Land Touches
Present Road-Bed Outlet

Smith and Wuynn
LAND

Point Smith Land Touches
Present Road Abt. 10' wide

deed, and he found that, by following these calls, they ran with the line of the old Boone Gap road as it was before the change, above referred to, was made. His report shows that the roadbed of that portion of the old Boone Gap road, which had been abandoned, was well marked and defined. He then took the bearing of the line from E. to D. and found it to be S. 4½ W., which corresponded with the corrected bearing of the old Mastin Clay line reversed, thus establishing, beyond question, that the point D. was properly located in the Mastin Clay line. As an additional check on the correctness of his work, he calculated the distance from E. to D., under an old survey as measured on the plat by scale, and found it to be 6.64 chains; and then measured the same line on the ground, and this was found to be 6.69, a discrepancy of only five links. According to his testimony, this was a very close correspondence with a survey fifty years old.

According to the testimony of these two surveyors, it is apparent that the out-let, which was being used by appellees, was wholly over and upon their own land; and the conclusion which we have reached, to the effect that this testimony of the surveyors is correct, is supported by the evidence to the effect that, at the time this change in the road was made, Todd consented to the change, and it is not probable that he would have done so had it entirely cut him off from the public road. The testimony of the many witnesses introduced, which tended to show that this outlet was over one of the narrow ends of this triangular strip, recently purchased by appellant, must be rejected as of little or no value, when compared with that of the surveyors whose work demonstrates, to a mathematical certainty, that the passway does not touch appellant's land.

Judgment affirmed.